UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| NICOLE SCHWEIHS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  2:18-CV-140 |
| ) | |
| STATE FARM INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant, State Farm Mutual Automobile Insurance Company, by counsel, Galen A. Bradley of Kightlinger & Gray, LLP, and for its Memorandum in Support of its Motion for Summary Judgment states as follows:

**INTRODUCTION**

This matter arises from a motor vehicle accident which occurred on August 17, 2016 wherein the Plaintiff, Nicole Schweihs, (hereinafter "Schweihs"), claims to have sustained personal injury. (Amended Complaint, attached hereto as **Exhibit A**, at ¶ 5). Schweihs alleges the Defendant, State Farm Mutual Insurance Company, ("hereinafter State Farm"), breached its contract by failing to pay the proceeds of an undersinsured motorist coverage policy to Schweihs. (Compl. ¶¶ 12–19). However, the undisputed facts show that State Farm did not breach its contract with Schweihs, and State Farm's Motion for Summary Judgment should be granted.

## STATEMENT OF MATERIAL FACTS

The facts material to Schweihs's claim for breach of contract against State Farm are set forth below:

### I. The August 17, 2016 Motor Vehicle Accident

Schweihs alleges that on August 17, 2016, at approximately 8:33 p.m., she was a passenger in a vehicle being driven by Dylan Sherman northbound on Willowcreek Road approaching the intersection of Stone Avenue in Portage, Porter County, Indiana. (Compl. ¶¶ 5–6). At the same time, another motorist, Anthony Ditola, was travelling southbound on Willowcreek Road. (Compl. ¶ 7). As Mr. Sherman attempted to make a left turn onto Stone Avenue, Mr. Ditola proceeded through the intersection and the two vehicles collided. (Compl. ¶¶ 8–10). Schweihs claims personal injury as a result of the motor vehicle accident. (Compl. ¶ 11). Schweihs sued both Dylan Sherman and Anthony Ditola in negligence for her injuries. (Compl.).

### II. Applicable Insurance Coverage

Schweihs did not have any personal auto insurance in her own name at the time of the accident. (Deposition of Nicole Schweihs, hereinafter "Schweihs Dep.," attached hereto as **Exhibit B**, at 123:14-17).

At the time of the accident, Mr. Ditola was insured by a policy of insurance issued by Progressive Insurance Company with liability limits of $25,000, which proceeds have been paid to Schweihs in full settlement of her claim against Mr. Ditola. (Compl. ¶ 13).

Dylan Sherman owned the vehicle he was operating at the time of the accident. (Schweihs Dep. at 36:19-24). At the time, Dylan was insured under a policy of insurance issued by State Farm to Robert Sherman which provided for underinsured motorist coverage with limits up to $100,000. (Schweihs Dep. at 36:25; 37:1-9; Compl. ¶ 14; Certificate of Coverage, attached

hereto as **Exhibit C**). At the time of the accident, Schweihs and Dylan Sherman were dating and living together at the home of Robert Sherman, Dylan's father. (Schweihs Dep. at 4:17-25; 5:1-2; 8:8-21; 9:3-25; 13:8-12). They have since married. (Schweihs Dep. at 4:17-25).

Schweihs has recovered $100,000 in coverage under Dylan Sherman's liability policy. (See Plaintiff's Verified Motion to Enforce Settlement, attached hereto as **Exhibit D**).

### III.     Sherman's Policy Language

Sherman's Policy of insurance with State Farm provides as follows:

>  **Insuring Agreements**
>
>  [ . . . ]
>
>  **2. Underinsured Motor Vehicle Coverage**
>
>  We will pay compensatory damages for bodily injury an insured[1] is legally entitled to recover from the owner or driver of an underinsured motor vehicle.[2] The bodily injury must be:

---

[1] *Insured* means:
   1. you;
   2. resident relatives;
   3. any other person while occupying:
         a. your car;
         b. a newly acquired car; or
         c. a temporary substitute car.
         Such vehicle must be used within the scope of your consent. Such other person occupying a vehicle used to carry persons for a charge is not an insured; and
   4. any person entitled to recover compensatory damages as a result of bodily injury to an insured as defined in items 1., 2., or 3. Above.

(Policy p. 13).

There is no dispute that Schweihs is an "insured" under the Policy.

[2] *Underinsured Motor Vehicle* means a land motor vehicle:
   1.   the ownership, maintenance, or use of which is either:
         a.   insured or bonded for bodily injury liability at the time of the accident; or
         b.   self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law; and
   2.   for which the total limits of insurance or self-insurance for bodily injury liability from all sources:
         a.   is less than the Underinsured Motor Vehicle Coverage limits of this policy; or
         b.   have been reduced by payments to persons other than the insured to less than the Underinsured Motor Vehicle Coverage limits of this policy.

   *Underinsured Motor Vehicle* does not include a land motor vehicle:

3

  a. sustained by an insured, and

  b. caused by an accident that involves the operation, maintenance, or use of an underinsured motor vehicle as a motor vehicle.

 We will pay only if the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply to the insured's bodily injury have been used up by payments or judgments or settlements, or have been offered to the insured in writing.

(Sherman Policy of Insurance, hereinafter the "Policy," attached hereto as

**Exhibit E**, p. 14).

Thereafter, the Policy explains the method for calculating the applicable limits of underinsured motor vehicle coverage:

### Limits – Underinsured Motor Vehicle Coverage

 The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

 1. The most we will pay for all damages resulting from bodily injury to any one insured injured in any one accident, including all damages sustained by other insureds as a result of that bodily injury, is the lesser of:

  a. the limit shown under "Each Person" reduced by the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for that bodily injury; or

  b. the total amount of the damages resulting from that bodily injury reduced by the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for the bodily injury.

---

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy;
2. owned by, rented to, or furnished or available for the regular use of you or any resident relative;

[ . . . ].

(Policy pp., 13-14).

>   2. Subject to item 1. above, the most we will pay for all damages resulting from bodily injury to two or more insureds injured in the same accident is the limit shown under "Each Accident" reduced by the sum of all payments for bodily injury made to any insured by or on behalf of any person or organization who is or may be held legally liable for the bodily injury.

These Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage limits are the most we will pay regardless of the number of:

>   1. insureds;
>   2. claims made;
>   3. vehicles insured; or
>   4. vehicles involved in the accident.

(Policy pp. 15-16).

Lastly, an additional provision of the Policy explains that insured parties are not entitled to a duplication of benefits:

> **Nonduplication – Uninsured Motor Vehicle Coverage and Underinsured Motor Vehicle Coverage**
>
> We will not pay under Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage any damages:
>
>   1. that have already been paid to or for the insured:
>
>       a. by or on behalf of any person or organization who is or may be held legally liable for the bodily injury to the insured or for property damage; or
>
>       b. for bodily injury or property damage under Liability Coverage of any policy issued by the State Farm Companies to you or any resident relative;
>
> [ . . . ].

(Policy p. 16).

Under the Policy, "You" is defined as "the named insured or named insureds shown on the Declarations Page." (Policy p. 5). The named insured

5

shown on the Declarations Page is Robert Sherman. (Sherman Declarations Page, **Exhibit F**).

## STANDARD OF REVIEW

A moving party is entitled to summary judgment where the record reveals there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(C); *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, the Court "must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party." *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 628 (7th Cir. 2006). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id*. "A court is to act with caution when granting a motion for summary judgment and may deny the motion when reason exists to believe that the better course is to proceed to a full trial." *Local Union No. 4343 of United Mine Workers of America v. Old Ben Coal Co.*, 762 F. Supp. 251, 253 (S.D. Ind. 1991).

> "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. […] Rather, the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. […] Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. [The court must therefore avoid] the temptation to decide which party's version of the facts is more likely true."

*Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (internal citations and quotations omitted).

## CHOICE OF LAW

Federal courts considering issues of insurance contract interpretation apply the law of the state in which the contract was executed. *State Farm Mut. Auto. Ins. Co. v. McNeal*, 491 F.Supp.2d 814, 820 (S.D. Ind. 2007) (citing *Pennington v. American Family Ins. Group.,* 626 N.E.2d 461 (Ind. Ct. App. 1993)). Indiana courts have held that summary judgment is particularly appropriate in the context of questions of law arising from the interpretation of insurance policies. *Wiegand*, 808 N.E.2d 180, 184 (Ind. Ct. App. 2004) (citing *State Farm Mut. Auto Ins. Co. v. Gonderman*, 637 N.E.2d 811, 813 (Ind. Ct. App. 1994)). "[T]he proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment." *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 6674 (Ind. 1997) (citing *Tate v. Secura Ins.,* 587 N.E.2d 665, 668 (Ind. 1992)).

## ARGUMENT

State Farm's Motion for Summary Judgment should be granted because there are no genuine issues of material fact, and the undisputed facts show State Farm did not breach its contract.

    **I.** **State Farm is Entitled to Judgment as a Matter of Law Because the Undisputed Facts Show State Farm Did Not Breach its Contract with Schweihs.**

Schweihs argues State Farm breached its contract by failing "to pay underinsured motorist benefits as required by the policy, all in breach of its duty to the Plaintiff, resulting in damage to Plaintiff." (Complaint ¶ 18). In support of this allegation, Schweihs alleges that as an insured under the Policy, she was entitled to coverage in the amount of $100,000.00 in underinsured motorist coverage. (Compl. ¶ 14). According to Schweihs, since she only received $25,000.00 from her settlement with Ditola (which amount represents his liability policy limits),

7

she is entitled to recover the remaining $75,000.00 in underinsured motorist coverage to compensate her for her injuries sustained in the accident. (Compl. ¶¶ 12-18).

However, in addition to having recovered the $25,000.00 limits of Ditola's liability policy, Schweihs has also already recovered $100,000.00 in settlement from Sherman, representing the limits of his liability policy. Both Schweihs and State Farm agree that Schweihs's recovery of $25,000.00 from Ditola reduced her potentially available underinsured coverage benefits to $75,000.00. The question of contract interpretation disputed in this matter is whether Schweihs's additional recovery of $100,000.00 from Sherman precludes her from recovering under the underinsured motorist provision of Sherman's Policy. Schweihs argues it does not. However, according to the unambiguous language of the Policy, discussed in greater detail below, this Court should find that it does.

In Indiana, courts tasked with construing contracts must look at the contract as a whole and, if the terms of the contract are unambiguous, enforce the contract according to its terms. *Ramirez v. American Family Mut. Ins. Co.,* 652 N.E.2d 511, 514 (Ind. Ct. App. 1995) (citing *Selleck v. Westfield Ins. Co.,* 617 N.E.2d 968, 970 (Ind. Ct. App. 1993)). When the language of an insurance policy is clear and unambiguous, the court gives the policy language its plan and ordinary meaning. *Ill. Farmers Ins. Co. v. Wiegand*, 808 N.E.2d 180, 184 (Ind. Ct. App. 2004) (citing *Eli Lilly & Co. v. Home Ins. Co*., 482 N.E.2d 467, 470 (Ind. 1985)). However, if the court determines the policy language is ambiguous, the policy will be strictly construed against the insurer. *Wiegand,* 808 N.E.2d at 184, (citing *Am. States. Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996)).

If the terms at issue are unambiguous, the court must enforce the provisions of the contract even where those provisions limit the insurer's liability. *Ramirez,* 652 N.E.2d 511, 514

(Ind. Ct. App. 1995) (citing *Selleck v. Westfield Ins. Co.,* 617 N.E.2d 968, 970 (Ind. Ct. App. 1993)). This is because insurers have the right to limit their coverage by imposing exceptions, conditions, and exclusions within insurance contracts. *American Family Mut. Ins. Co. v. Federated Mut. Ins. Co.*, 775 N.E.2d 1198, 1206 (Ind. Ct. App. 2002). Where an insurance policy's terms are unambiguous, a court therefore may not extend coverage beyond that provided by the unambiguous language in the policy. *Shelter Ins. Co. v. Woolems*, 759 N.E.2d 1151, 1155 (Ind. Ct. App. 2001), *trans. denied*.

Because, as discussed below, the Policy provides Schweihs's potentially available underinsured motorist benefits have been reduced to $0, this Court should find as a matter of law that State Farm has not breached its contract as to Schweihs, and dismiss this matter with prejudice.

### A. State Farm Did Not Breach its Contract with Schweihs Because the Policy Provides Schweihs is Not Entitled to Duplication of Benefits.

State Farm is entitled to judgment as a matter of law with respect to Schweih's claim for breach of contract because State Farm acted in accordance with the nonduplication provision of Sherman's Policy of insurance in refusing to pay Schweihs benefits under the underinsured motor vehicle coverage provision of Sherman's Policy. Sherman's Policy of insurance with State Farm provides, in pertinent part:

**Nonduplication – Uninsured Motor Vehicle Coverage and Underinsured Motor Vehicle Coverage**

*We will not pay under Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage any damages:*

    *1.*    *that have already been paid to or for the insured:*

        a.    by or on behalf of any person or organization who is or may be held legally liable for the bodily injury to the insured or for property damage; or

9

> b. *for bodily injury or property damage under Liability Coverage of any policy issued by the State Farm Companies to you or any resident relative*;
>
> [ . . . ].

(Policy p. 16) (emphasis added).

Pursuant to the unambiguous nonduplication language of the Policy, Schweihs, although an insured, is not entitled to double benefits. While recovery under the underinsured motorist provision of the Policy would be available to Schweihs as an insured, she may not recover underinsured motorist benefits if she has already recovered liability benefits under the same Policy.

The nonduplication language as set forth above applies in just such circumstances as those present here – where an insured under the Policy (such as Schweihs) is potentially entitled to recover under *both* the liability portion of the Policy *and* the underinsured portion of the Policy, by virtue of being both (1) an insured covered under the Policy, and also (2) injured as a result of the actions of another insured whose liability is covered under the same Policy.

In accordance with the unambiguous nonduplication language of the Policy, "[State Farm] will not pay under [. . . ] Underinsured Motor Vehicle Coverage any damages [ . . . ] that have already been paid to [ . . . ] the insured, (Schweihs) [ . . . ] for bodily injury [ . . . ] under Liability Coverage of any policy issued by [State Farm] to [Robert Sherman]." (Policy p. 16). In other words, because Schweihs has already recovered under the Liability section of Sherman's Policy, she is not entitled to recover for the same bodily injury under the Underinsured Motorist section of the same Policy. As a result, State Farm is entitled to judgment as a matter of law and Schweihs's claim should be dismissed.

> **B. State Farm Did Not Breach its Contract with Schweihs Because Pursuant to the Limitations Language in the Policy, the Amount of Underinsured Motorist Benefits Arguably Available to Schweihs is $0.**

In addition to the nonduplication which unambiguously precludes double recovery for Schweihs, Schweihs's claim for breach of contract against State Farm also fails because the limitation language contained in Sherman's Policy of insurance with State Farm would also preclude Schweihs from recovering any benefits in underinsured motor vehicle coverage even if that coverage were available. Accordingly, State Farm is entitled to judgment as a matter of law.

Sherman's Policy provides underinsured motorist coverage as follows:

> **Insuring Agreements**
>
> [ . . . ]
>
> **2. Underinsured Motor Vehicle Coverage**
>
> We will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle. The bodily injury must be:
>
> a.      sustained by an insured, and
>
> b.      caused by an accident that involves the operation, maintenance, or use of an underinsured motor vehicle as a motor vehicle.
>
> We will pay only if the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply to the insured's bodily injury have been used up by payments or judgments or settlements, or have been offered to the insured in writing.
>
> (Policy p. 14).

According to the above provision, the Policy obligates State Farm to extend underinsured motorist coverage to individuals insured by the Policy where an insured is legally entitled to recover damages for bodily injury from an underinsured motorist. Here, it is undisputed that Schweihs is an "insured" under the Policy. For purposes of this Motion, it is also undisputed that

11

Ditola is an underinsured motorist, given that his liability policy limits totaled $25,000, while the Sherman Policy's underinsured motorist coverage limits are $100,000 per person. It is also undisputed that Schweihs was "legally entitled to recover" damages from Ditola based upon her allegations of negligence against him for causing the accident which led to Schwiehs's claimed injuries. Lastly, for purposes of this Motion it is undisputed that Schweihs sustained bodily injury as a result of the subject motor vehicle accident (although State Farm reserves the right to contest the nature and extent of Schweihs's claimed injuries). Yet, while (setting aside the nonduplication language discussed above), the terms of the Policy make underinsured motorist benefits *available* to Schweihs, the question of the *amount* of benefits Schweihs is entitled to recover under that provision requires further analysis.

Once setting forth the terms by which underinsured motorist coverage becomes *available* to an insured, the Policy goes on to explain how the limits of underinsured motorist coverage will be *applied*. Regarding the limits of coverage available to an insured, the Policy provides as follows:

> **Limits – Underinsured Motor Vehicle Coverage**
>
> The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".
>
> 1. The most we will pay for all damages resulting from bodily injury to any one insured injured in any one accident, including all damages sustained by other insureds as a result of that bodily injury, is the lesser of:
>
>    a. the limit shown under "Each Person" reduced by the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for that bodily injury; or
>
>    b. the total amount of the damages resulting from that bodily injury reduced by the sum of all payments for damages

12

> resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for the bodily injury.
>
> 2. Subject to item 1. above, the most we will pay for all damages resulting from bodily injury to two or more insureds injured in the same accident is the limit shown under "Each Accident" reduced by the sum of all payments for bodily injury made to any insured by or on behalf of any person or organization who is or may be held legally liable for the bodily injury.
>
> These Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage limits are the most we will pay regardless of the number of:
>
> 1. insureds;
> 2. claims made;
> 3. vehicles insured; or
> 4. vehicles involved in the accident.

(Policy p. 15-16).

According to the unambiguous language of the Policy, the maximum amount of benefits available to Schweihs in underinsured coverage is the underinsured limit for "Each Person," less "the sum of all payments for damages" made to Schweihs "resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for that bodily injury." (Policy p. 15-16). Here, both Dylan Sherman and Anthony Ditola are a "person [ . . . ] who is or may be held legally liable" for Schweih's bodily injury, as Schweihs has sued both Dylan Sherman and Anthony Ditola alleging that each were negligent and proximately caused her injuries. The underinsured motor vehicle coverage limit for "Each Person" under Sherman's Policy is $100,000. Schweihs has recovered $25,000 in liability coverage from Ditola, and $100,000 in liability coverage from Sherman. Accordingly, "the sum of all payments for damages" made to Schweihs is $125,000. Therefore, assuming *arguendo* that Schweihs were entitled to underinsured motorist benefits, the maximum amount of underinsured motorist coverage available to Schweihs would be $0.

13

As a result of the straightforward application of the unambiguous Policy language discussed above, State Farm did not breach its contract when it declined to offer Schweihs any recovery over and above the $100,000 which State Farm has already paid to Schweihs as a result of the motor vehicle accident which is the subject of this case. This Court should find no material facts exist for trail and that State Farm is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the Defendant, State Farm Mutual Automobile Insurance Company, requests the Court to enter judgment in its favor and dismiss this matter with prejudice.

Respectfully submitted,

**KIGHTLINGER & GRAY, LLP**
Attorney for Defendant

By: _____
Galen A. Bradley
Attorney No. 18545-64

**KIGHTLINGER & GRAY, LLP**
8001 Broadway, Suite 100
Merrillville IN  46410
219/769-0413
219/769-0413

180124\5723028-1