UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| NICOLE SCHWEIHS, </br></br>  Plaintiff, </br></br> v. </br></br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, </br></br>  Defendant. | )</br>)</br>)</br>)</br>)  Case No. 2:18-cv-140</br>)</br>)</br>)</br>)</br>) |

**OPINION AND ORDER**

This matter is before the court on the Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment [DE 32] filed by the defendant, State Farm Mutual Automobile Insurance Company, on October 29, 2019. For the following reasons, the motion is **DENIED.**

*Background*

This matter arises out of a motor vehicle accident that occurred on August 17, 2016. The plaintiff, Nicole Schweihs, was a passenger in a vehicle being driven by Dylan Sherman, a State Farm insured. Sherman attempted to make a left turn onto Stone Avenue in Portage, Indiana, when another motorist, Anthony Ditola, proceeded through the intersection and the two vehicles collided. Schweihs suffered injuries as a result of the accident and sued both Sherman and Ditola for negligence.

At the time of the accident, Schweihs did not have any personal auto insurance in her own name. Ditola was insured by a policy of insurance issued by Progressive Insurance Company. Progressive paid Schweihs the liability limits of $25,000 in full settlement of her

claim against Ditola.

Sherman owned the vehicle he was operating.  He was insured under a policy of insurance issued by State Farm to his father, Robert Sherman.  The Policy provided for underinsured motor vehicle coverage with limits up to $100,000 and liability coverage with limits up to $100,000.  At the time of the accident, Sherman and Schweihs were dating and lived together at Robert Sherman's home.  They are now married.  Schweihs recovered $100,000 in coverage under Sherman's liability policy.

Schweihs has brought this action against State Farm for breach of contract.  Schweihs contends that State Farm breached its contract by failing to pay underinsured motorist benefits as required by the Policy.  State Farm has filed the instant motion arguing that it is entitled to judgment as a matter of law because the undisputed facts show it did not breach its contract with Schweihs.  Schweihs filed a response in opposition on December 31, 2019, and State Farm filed a reply on January 13, 2020.

*Discussion*

Pursuant to **Federal Rule of Civil Procedure 56(a),** summary judgment is proper only if it is demonstrated that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014); *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).  A fact is material if it is outcome determinative under applicable law.  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed. 2d 142,

155 (1970); *Stephens*, 569 F.3d at 786.  When the movant has met its burden, the opposing party cannot rely solely on the allegations in the pleadings but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor."  *Marr v. Bank of America, N.A.,* 662 F.3d 963, 966 (7th Cir. 2011); *see also* **Steen v. Myers,** 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005) (summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.")).  The non-moving party cannot rely on conclusory allegations.  *Smith v. Shawnee Library System,* 60 F.3d 317, 320 (7th Cir. 1995).  Failure to prove an essential element of the alleged activity will render other facts immaterial.  *Celotex,* 477 U.S. at 323; *Filippo v. Lee Publications, Inc.,* 485 F. Supp. 2d 969, 972 (N.D. Ind. 2007) (the non-moving party "must do more than raise some metaphysical doubt as to the material facts; he must come forward with specific facts showing a genuine issue for trial.").

     In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 212 (1986); *McDowell v. Vill. of Lansing*, 763 F.3d 762, 764, 765 (7th Cir. 2014).  In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.  *Anderson,* 477 U.S. at 248; *Cung Hnin v. Toa, LLC*, 751 F.3d 499, 504 (7th Cir. 2014); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

     State Farm has argued that the undisputed evidence shows that there are no genuine issues of material fact, and therefore it is entitled to judgment as a matter of law.  State Farm

3

contends that it did not breach its contract with Schweihs by failing to pay her benefits under the underinsured motor vehicle provision of Sherman's policy.  State Farm has indicated that under the Policy, Schweihs' available underinsured motorist benefits have been reduced to $0.  However, Schweihs claims that State Farm's policy is internally inconsistent concerning its definition of an "underinsured vehicle," the "insuring agreement," the "limits" of the "underinsured motor vehicle coverage," and the operation of the "nonduplication" provision.  She asserts that the inconsistency creates irreconcilable ambiguities within the Policy.

In Indiana, "[t]he interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question which is particularly suited for summary judgment."  ***Wagner v. Yates,*** 912 N.E.2d 805, 808 (Ind. 2009) (citation omitted).  Indiana courts interpret an insurance contract under the same rules of construction as other contracts.  ***Westfield Cos. v. Knapp,*** 804 N.E.2d 1270, 1274 (Ind. Ct. App. 2004) (citation omitted).  Courts "interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract."  ***Westfield Cos.,*** 804 N.E.2d at 1274.

The relevant portions of the Policy provide as follows:

***Insured*** means:
>    1. you;
>    2. resident relatives;
>    3. any other person while occupying:
>        a. your car;
>        b. a newly acquired car; or
>        c. a temporary substitute car.

***Underinsured Motor Vehicle*** means a land motor vehicle:
>    1. the ownership, maintenance, or use of which is either:
>        a. insured or bonded for bodily injury liability at the time of the accident; or

    b. self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law; and

  2. for which the total limits of insurance or self-insurance for bodily injury liability from all sources:

    a. is less than the Underinsured Motor Vehicle Coverage limits of this policy; or

    b. have been reduced by payments to persons other than the insured to less than the Underinsured Motor Vehicle Coverage limits of this policy.

*Underinsured Motor Vehicle* does not include a land motor vehicle:

  1. whose ownership, maintenance, or use is provided Liability Coverage by this policy;

  2. owned by, rented to, or furnished or available for the regular use of you or any resident relative;

[ . . . ]

**Insuring Agreements**

[ . . . ]

  **2. Underinsured Motor Vehicle Coverage**

We will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle. The bodily injury must be:

    a. sustained by an insured, and

    b. caused by an accident that involves the operation, maintenance, or use of an underinsured motor vehicle as a motor vehicle.

We will pay only if the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply to the insured's bodily injury have been used up by payments or judgments or settlements, or have been offered to the insured in writing.

(Policy, p. 13-14).

Underinsured motorist coverage is mandatory absent an express waiver. ***United Nat'l Ins. Co. v. DePrizio***, 705 N.E.2d 455 (Ind. 1999). Underinsured motorist coverage limits must at least equal the limits of liability specified in the bodily injury liability provisions of an insured's

policy, unless such coverage has been rejected in writing.  **Ind. Code § 27-7-5-2**.  However, underinsured motorist coverage must be made available in limits of not less than $50,000.  **Ind. Code § 27-7-5-2**.  In order to recover underinsured motorist coverage, an insured "must establish that the tortfeasor was answerable in negligence to him."  *Sullivan v. Am. Cas. Co. of Reading, Pa.*, 605 N.E.2d 134, 139 (Ind. 1992).  As a condition precedent to underinsured coverage, the insured must establish that the amount received from the tortfeasor's policy is less than the per-person limits for the insured's underinsured motor vehicle coverage.  *Lakes v. Grange Mut. Cas. Co.*, 964 N.E.2d 796, 805 (Ind. 2012).

It is undisputed that Schweihs is an "insured" under the Policy.  It is also undisputed that Ditola is an underinsured motorist, given that his liability policy limits totaled $25,000, while the Policy's underinsured motor vehicle coverage limits were $100,000 per person.  Furthermore, it is undisputed that Schweihs was "legally entitled to recover" damages from Ditola based upon her allegations that he was negligent and that she sustained injuries as a result of the accident.

Schweihs recovered $25,000 from her settlement with Ditola, his liability policy limits, and $100,000 from Sherman under the liability portion of the Policy.  Schweihs claims that as an insured under the Policy, she is entitled to $100,000 in coverage under the underinsured motor vehicle coverage.  She does not dispute that her recovery from Ditola has reduced her potentially available underinsured coverage benefits to $75,000.  However, State Farm contends that pursuant to the unambiguous nonduplication language of the Policy, Schweihs may not recover underinsured motorist benefits since she has recovered liability benefits under the same Policy.

The nonduplication provision provides as follows:

> **Nonduplication – Uninsured Motor Vehicle Coverage and Underinsured Motor Vehicle Coverage**
>
> *We will not pay under Uninsured Motor Vehicle Coverage or Underinsured Motor*

*Vehicle Coverage any damages:*

1. that have already been paid to or for the insured:

    a. by or on behalf of any person or organization who is or may be held legally liable for the bodily injury to the insured or for property damage; or

    b. for bodily injury or property damage under Liability Coverage of any policy issued by the State Farm Companies to you or any resident relative;

2. that:

    a. have already been paid;

    b. could have been paid; or

    c. could be paid

    to or for the insured under any workers' compensation law, disability benefits law, or similar law.

    [ . . . ]

(Policy, p. 16).

Resolving this dispute requires the court to interpret the nonduplication provision of the Policy. Courts are to interpret policy terms "from the perspective of an ordinary policyholder of average intelligence." ***Allgood v. Meridian Sec. Ins. Co.,*** 836 N.E.2d 243, 246–47 (Ind. 2005). "Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, Indiana courts construe insurance policies strictly against the insurer." ***Auto–Owners Ins. Co. v. Benko***, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012) (citation omitted). The court construes the insurance policy as a whole and considers all of the provisions of the contract and not just the individual words, phrases, or paragraphs. ***Buckeye State Mut. Ins. Co. v. Carfield,*** 914 N.E.2d 315, 318 (Ind. Ct. App. 2009), *trans. denied.*

State Farm claims that pursuant to the language of the Policy, "[State Farm] will not pay

7

under [. . .] Underinsured Motor Vehicle Coverage any damages [. . .] that have already been paid to [. . .] the insured, (Schweihs) [. . .] for bodily injury [. . .] under Liability Coverage of any policy issued by [State Farm] to [Robert Sherman]." In other words, State Farm has indicated that "because Schweihs has already recovered under the Liability section of Sherman's policy, she is not entitled to recover for the same bodily injury under the Underinsured Motorist section of the same Policy." (DE 33, p. 10).

Schweihs asserts that she is not seeking to recover under the liability and underinsured motor vehicle sections of the Policy based on Sherman's vehicle alone. An underinsured motor vehicle does not include a motor vehicle whose ownership or use is provided Liability Coverage by this Policy. (Policy, p. 14). Schweihs recognizes that Sherman's vehicle is excluded from being an underinsured vehicle. Instead, she seeks to recover underinsured motorist benefits based on Ditola's vehicle being underinsured and his insurance proceeds being insufficient. She claims that because Sherman's vehicle is excluded from being an underinsured vehicle, the $100,000 she recovered under the liability section of the Policy cannot affect any recovery of underinsured motor vehicle benefits.

Various insurance treatises provide comprehensive explanations on underinsured motor vehicle benefits. "As a general rule, a passenger who has made a liability recovery under [the host driver's] policy may also make an underinsured motorist recovery under the same policy where a second negligent vehicle involved in the accident was underinsured." 3 Irvin E. Schermer & William J. Schermer, *Automobile Liability Insurance* § 39:12 (4th ed. 2004). Likewise, passenger-claimants are "entitled to recover both under a bodily injury liability coverage and an uninsured motorist coverage included in the same insurance policy ... when ... [the] passenger [is] in an insured automobile and is injured in an accident with an uninsured

motorist that is caused by the negligence of both drivers." 1 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 14.6 (3d ed. 2005).

Neither party has cited to any cases directly on point with a nonduplication provision like the one found in the instant matter.  Therefore, the court has looked to other authority and secondary sources for guidance on the interpretation of similar nonduplication provisions.  A nonduplication provision in an automobile insurance policy prevents an insured from receiving double recovery of damages.  *See* **Frisenda v. Floyd,** 308 F. Supp. 3d 869, 875 (N.D. W. Va. 2018) (citing **State Farm Mut. Auto. Ins. Co. v. Schatken,** 737 S.E.2d 229, 234 (W. Va. 2012)).  If the liability coverage paid to a claimant exceeds the claimant's damages, the effect of the nonduplication provision is to avoid the duplication of benefits.  1 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 14.6 (3d ed. 2005).  Once the insured has been fully compensated for damages, the nonduplication provision prevents the insured from receiving a windfall recovery greater than the damages actually sustained.  *See* 7A Am. Jur. 2d Automobile Insurance § 436 (2d ed. 2020).

Although Schweihs has recovered $125,000, a total amount that exceeds the available underinsured motor vehicle coverage limit, the nonduplication provision does not relieve State Farm from its obligation to pay for losses up to the underinsured limits.  *See* **Mabry v. State Farm Mut. Auto. Ins. Co.,** 780 S.E.2d 533, 536 (Ga. Ct. App. 2015) (nonduplication provision did not preclude recovery for uncompensated losses remaining after payments contemplated by the policies were made).  State Farm has not contested Schweihs' total amount of damages or alleged "double recovery."  Instead, State Farm contends that Schweihs cannot recover for the same bodily injury under both the liability and underinsured motor vehicle sections of the same policy.  However, there is clear distinction between attempts to reduce coverage and offsets

against damages to prevent double recovery. *See* 12 Couch on Insurance § 171:24 (3d ed. 2019) ("If the claimant does not recover fully from other sources, then the UIM carrier is not entitled to a setoff against its liability limit. The UIM carrier may be entitled to a setoff when the sum of the carrier's limit of liability and the amount recovered from other sources exceeds the claimant's actual damages. This method supports the policy of promoting full but not double recovery.").

From the perspective of an ordinary policyholder of average intelligence, reasonably intelligent people may interpret the language in the nonduplication provision differently. State Farm claims that the nonduplication provision precludes Schweihs from recovering under both the liability and underinsured motorist sections of the Policy. However, the court interprets the nonduplication provision to preclude Schweihs from recovering damages in excess of the injury she has sustained. Assuming that Schweihs' damages are greater than $200,000, State Farm's nonduplication provision is not implicated. *See Schatken,* 737 S.E.2d at 236 ("[O]nly if an insured's damages are less than policy limits is the non-duplication provision even implicated. If the insured's damages are greater than the underinsured motorist limits, there is no concern of double recovery because the insured is not being made whole in any event."); *See Schultz v. Farmers Ins. Group of Cos.,* 805 P.2d 381, 386 (Ariz. 1991) (non-duplication endorsement in UM policy upheld so long as it does not prevent the insured from fully recovering her damages). Accordingly, the court finds that the nonduplication provision is ambiguous.

Next, State Farm has argued that according to the unambiguous language of the limits provision, the maximum amount of benefits available to Schweihs in underinsured motor vehicle coverage is $0. The limits provision provides as follows:

**Limits – Underinsured Motor Vehicle Coverage**

The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

1. The most we will pay for all damages resulting from bodily injury to any one insured injured in any one accident, including all damages sustained by other insureds as a result of that bodily injury, is the lesser of:

    a. the limit shown under "Each Person" reduced by the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for that bodily injury; or

    b. the total amount of the damages resulting from that bodily injury reduced by the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for the bodily injury.

2. Subject to item 1. above, the most we will pay for all damage resulting from bodily injury to two or more insureds injured in the same accident is the limit shown under "Each Accident" reduced by the sum of all payments for bodily injury made to any insured by or on behalf of any person or organization who is or may be held legally liable for the bodily injury.

These Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage limits are the most we will pay regardless of the number of:

1. insureds;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

(Policy, page 15-16).

State Farm contends that according to the unambiguous language of the limits provision, the maximum amount of benefits available to Schweihs in underinsured coverage is the underinsured limit for "Each Person," less "the sum of all payments for damages" made to Schweihs "resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for that bodily injury." (DE 33, p. 13). The underinsured

11

motor vehicle coverage limit for "Each Person" under the Policy is $100,000. State Farm asserts that both Sherman and Ditola are a "person [. . .] who is or may be held legally liable" for Schweihs' bodily injury. Thus, State Farm claims that the maximum amount of underinsured motor vehicle coverage available to Schweihs is $0 because she recovered $25,000 in liability coverage from Ditola and $100,000 in liability coverage from Sherman, totaling $125,000.

Here, each section of the Policy contains a separate limits provision. The liability and medical payments coverage sections include limits provisions that are different from those in the uninsured and underinsured motor vehicle section. In *Masten v. AMCO Ins. Co.,* 953 N.E.2d 566, 571 (Ind. Ct. App. 2011), *trans. denied,* each section of the policy also included separate limit of liability provisions. The court found that the limit of liability provision was ambiguous because it could be read to apply only to underinsured motorists as the provision was located within that endorsement. *Masten,* 953 N.E.2d at 571. Moreover, in *Am. Economy Ins. Co. v. Motorists Mut. Ins. Co.,* 605 N.E.2d 162 (Ind. 1992), the supreme court, although it based its decision on additional language in the policy, construed an uninsured endorsement similarly. The supreme court concluded the limit of liability applied only to the section of the policy within which it was located because of the "clearly delineated provisions" in the policy and location of the limit of liability provisions within a clearly marked limit of liability section within the uninsured motorist endorsement. *Am. Economy Ins. Co.,* 605 N.E.2d at 164.

Because each section of the Policy has its own distinct limits provision, the court finds that the limits provision within the underinsured vehicle section of the Policy is ambiguous. An ordinary policyholder of average intelligence could conclude that the limits provision included in the underinsured motorist section applied only to individuals operating underinsured motor vehicles. "[T]he location of relevant provisions and clarity of delineation of sections and

12

provisions can be highly persuasive in interpreting insurance policies." *Masten,* 953 N.E.2d at 571 n.4.

Furthermore, included in the underinsured motor vehicle section of the Policy, State Farm promised "to pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle," and the bodily injury must be "caused by an accident that involves the operation, maintenance, or use of an underinsured motor vehicle as a motor vehicle." (Policy, p. 14). These statements emphasize the limited scope of the coverage, and when read in favor of Schweihs, the provisions apply only to underinsured motorists. Schweihs seeks to recover under Sherman's underinsured motor vehicle coverage based on Ditola's negligence and the Ditola vehicle being underinsured.

Although neither party cited **Ind. Code § 27–7–5–2**, the underinsured motorist statute, its main purpose is to place an injured insured "in substantially the same position [she] would have occupied had the offending party complied with the minimum requirements of the financial responsibility act." *West Bend Mut. v. Keaton,* 755 N.E.2d 652, 655 (Ind. Ct. App. 2001). Ind. Code § 27–7–5–2 "is a mandatory, full-recovery, remedial statute." *United Nat. Ins. Co. v. DePrizio,* 705 N.E.2d 455, 460 (Ind. 1999). Stated differently, underinsured motorist coverage is "designed to provide individuals indemnification in the event negligent motorists are not adequately insured for damages that result from motor vehicle accidents." *DePrizio,* 705 N.E.2d at 459.

In *Justice v. Am. Family Mut. Ins. Co.*, 4 N.E.3d 1171 (Ind. 2014), an underinsured motorist collided with an IndyGo city bus driven by Howard Justice, and Justice received a net amount of $71,958.50 in worker's compensation benefits and $25,000 from the underinsured motorist's insurer, bringing his total recovery to $96,958.50. *Justice,* 4 N.E.3d at 1173–74. At

the time of the accident, Justice carried an underinsured motorist policy issued by American Family Mutual Insurance Company that provided coverage up to $50,000 per person. *Justice,* 4 N.E.3d at 1173–74.

Based upon the policy language, the supreme court concluded that the worker's compensation benefits would be deducted from the policy limit. *Justice,* 4 N.E.3d at 1177–78. Specifically, the supreme court held that in application, this meant that the "limits of liability of this coverage," $50,000, will be reduced by the $25,000 payment Justice received from a "legally liable" entity—the underinsured motorist's insurer—and by the $71,958.50 Justice received in workers' compensation and disability benefits. *Justice,* 4 N.E.3d at 1177–78. The supreme court concluded that the policy limit was reduced to zero under such a calculation. *Justice,* 4 N.E.3d at 1177–78.

The supreme court then discussed Ind. Code § 27–7–5–2(a) which at that time provided in pertinent part: "underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000) ... Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000)." *Justice,* 4 N.E.3d at 1177–78. The supreme court held that "[i]f [the underinsured motorist] had carried the required amount of liability insurance, Justice would have received $50,000, and the purpose of our uninsured/underinsured motorist statute is to put him in that position." *Justice,* 4 N.E.3d at 1179. The supreme court concluded that in light of the statutory purpose and precedent that Justice was entitled to recover the remaining $25,000 from American Family and that any policy provision to the contrary is unlawful and unenforceable. *Justice,* 4 N.E.3d at 1179–80.

Therefore, diminishing the amount of underinsured motor vehicle coverage as indicated by State Farm would go against the statutory purpose that Schweihs recover what she would

14

have received if Ditola had maintained an adequate policy of liability insurance.  Schweihs does not dispute that the underinsured motor vehicle coverage must be reduced by the $25,000 she recovered from Ditola, totaling $75,000.  However, the court without knowing the extent of Schweihs' damages cannot determine if she is entitled to recover the remaining $75,000 in underinsured motor vehicle coverage from State Farm.  The parties are **ORDERED** to file briefs indicating why the court should not enter judgment in favor of Schweihs within 21 days of this Opinion and Order.

Based on the foregoing reasons, Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment [DE 32] is **DENIED.**

ENTERED this 30th day of March, 2020.

/s/ Andrew P. Rodovich
United States Magistrate Judge